IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEFF POFF,

                Plaintiff,

  v.

CAPT. HULCE, CPT. FEDIE, MARK KARTMAN,
PAULA STOUDT, SGT. MEZZENETTE, SGT.
MELLUM, SGT. WILKERSON, SGT. HINADUI, CO          ORDER
WEADGE, CO SIERZANT, CO CHESTNUT, HEIDI
BROWN, LT. SCULLION, GARY BOUGHTON, SGT.        23-cv-43-wmc[1]
KNOCKEL, SGT. WILKISON, SGT. JONDOE, CO
LAXTON, CO BAAH, PSU LEMIOUX, PSU CLINE,
PSU LANDERS, ICE J. PAYNE, ICE E. RAY, HSUM
JAMIE ADAMS, HSUAM KINYON, and NURSE
KINYON,

                Defendants.

---

Pro se plaintiff Jeff Poff alleges that defendants violated his civil rights in several ways, including by failing to protect him from harming himself. Because Poff proceeds in forma pauperis, I must screen his complaint under 28 U.S.C. § 1915(e)(2)(B). I must dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from an immune defendant. I must accept Poff's allegations as true and construe them generously, holding the complaint to a less stringent standard than one a lawyer drafts. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I will dismiss the complaint because it improperly joins defendants and has other deficiencies, but I will allow Poff to file an amended complaint to fix these problems.

---

[1] I am exercising jurisdiction over this case solely for screening purposes.

ALLEGATIONS OF FACT

Poff is incarcerated at Wisconsin Secure Program Facility (WSPF). Poff alleges that he has mental health problems and a history of harming himself. Poff has sued 27 defendants and alleged at least 14 different incidents, excluding his numerous challenges to the disposition of his grievances, during which defendants allegedly violated his civil rights. I will briefly summarize these incidents.

**Incident 1**: In 2017, Poff was transferred to WSPF, where he had not been housed since 2002, based on the falsification of his psychological services unit (PSU) records. Poff does not allege who falsified his PSU records in 2017.

**Incident 2**: During the COVID-19 pandemic, defendant Weadge, a correctional officer, harassed and retaliated against Poff by refusing to wear gloves while giving Poff his food and medication and unlawfully opening and reading Poff's mail. Poff does not allege why Weadge started doing this.

**Incident 3**: On an unspecified date, Poff complained to defendant Boughton, WSPF's warden, and defendant Stoudt, WSPF's deputy warden, about an "illegal sexual affair" between defendant Hartman, the security director, and defendant Adams, the manager of the health services unit (HSU). Boughton and Stoudt did not investigate Poff's complaint.

**Incident 4**: On unspecified dates, Poff wrote a letter to the Wisconsin Department of Justice (DOJ) about the alleged affair, and defendant Scullion, a correctional lieutenant, wrote a conduct report to punish Poff for this behavior.

**Incident 5**: Poff's due process hearing for the conduct report was held on October 6, 2021. Poff told the hearing officer that he was going to harm himself and asked to

2

be restrained. Defendant Lemioux, who worked in the PSU, ignored Poff. Poff was violently removed from the strip cage after trying to hang himself.

**Incident 6**: On October 11 and 12, 2021, Poff complained to defendant Landers, the PSU manager, that Lemioux had ignored him and that Lemioux and others were constantly falsifying his PSU records. Defendant Landers, who worked in the PSU, declined to act.

**Incident 7**: On October 15, 2021, Poff told defendant Doe, a correctional sergeant, that he was suicidal. Doe ignored Poff's complaints. Shortly after midnight, Poff covered his cell's door and windows and cut himself with a large paper clip. Poff believes that "defendants" intentionally left the paper clip in his cell. Weadge and defendant Chestnut, a correctional officer, came to Poff's cell but just insulted him.

**Incident 8**: On October 16, 2021, Poff was rushed to the hospital due to a severe anxiety attacked caused by constant harassment from "WSPF staff" caused by his letter to the DOJ. Poff received anti-anxiety medication at the hospital. When Poff returned to WSPF, Adams would not prescribe this medication and told Poff to deal with his mental health problems on his own.

**Incident 9**: On the same day, Poff asked defendant Cline, who worked in the PSU, for mental health treatment. Cline declined to help Poff.

**Incident 10**: On October 19, 2021, Poff complained to defendant Brown about the October 15, 2021, incident. Brown did not respond.

**Incident 11**:  On October 21, 2021, Poff met with Adams, Cline, and defendant Kinyon, who worked in the HSU. The subject of the meeting was Poff's "ongoing" hunger strike, recent suicide attempts, and letter to the DOJ about Hartman and Adams.

Nondefendant Weman accused Poff of "throwing Adams under the bus," and Adams ordered Poff to apologize. Poff refused to do this, which caused Adams to storm out of the meeting.

**Incident 12**: On November 4, 2021, Poff told defendant Kinyon, a nurse, that he was having an anxiety attack and needed to be placed on observation status. Defendants Mazzenette, Mellum, Fedie, Colin, and Sierzant, all correctional staff, ignored his complaints, which caused him to cut himself with the same large paper clip that he previously cut himself with. Poff was not placed on observation status until early next morning after a staff change.

**Incident 13**: On November 5 or 6, 2021, Poff cut himself with the same large paper clip when he was on observation status, which he blames on the "constant negligence by those involved in this lawsuit."

**Incident 14**: On November 8, 2021, correctional staff used OC spray on a prisoner in an adjacent cell. Poff, who is allergic to OC spray, asked officers to remove him from his cell or get his asthma inhaler. Poff started hitting his cell's door because these efforts were unsuccessful, which caused him to break his finger. To get attention, Poff started cutting himself with the same large paper clip. Sierzant, Fedie, and defendants Baah, Laxton, Knockel, and Wilkison, all correctional staff, went to his cell. Knockel gave Poff his inhaler even though Fedie told Knockel not to do that. No one took the paper clip from Poff, but he voluntarily gave it to Adams the next day.

ANALYSIS

Under Rule 20(a)(2), "[a] plaintiff may join multiple defendants only when the claims arise from the same set of events and share a common question of law or fact." *See Decker v. Fed. Bureau of Prisons*, No. 22-2475, 2023 WL 2942455, at *2 (7th Cir. Apr. 14, 2023). A court

4

may consider whether the plaintiff has improperly joined defendants when screening a complaint. *See Mitchell v. Kallas*, 895 F.3d 492, 502–03 (7th Cir. 2018).

The multiple incidents that Poff alleges do not arise from the same set of events. Poff sues multiple defendants based on, at a minimum, 14 incidents dating from 2017 to 2021. He alleges claims for disregard of safety, denial of medical care, excessive force, unlawful conditions of confinement, retaliation, deprivation of due process, and negligence. Many of the incidents on which Poff bases his claims happened at different dates, some of which Poff fails to specify, and primarily involve different defendants. Poff tries to tie these incidents together by alleging a pattern of retaliation substantially based on his complaints about the alleged affair between prison officials. But some of the allegedly retaliatory acts predate these complaints, and Poff doesn't allege that most of the defendants knew about these complaints.

Because Poff attempts to proceed on various claims based on multiple incidents involving many different, but at times overlapping, defendants, it is impracticable to sever his complaint into separate lawsuits or dismiss the improperly joined defendants. *See Williams v. Foster*, No. 19-cv-1697, 2021 WL 148798, at *5 (E.D. Wis. Jan. 15, 2021). Instead, I will allow Poff to file an amended complaint that fixes this problem. Poff may not be able to bring all these claims in a single lawsuit.

The complaint has other problems. At times, Poff refers to "defendants," "WSPF staff," or "those involved in this lawsuit" without further identifying information, making it unclear which defendants he is referring to. Because "[i]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation," *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (alteration adopted), Poff should specifically identify each defendant who has violated his rights and avoid referring to several defendants together. For

5

instance, if more than one defendant has taken a particular action that Poff believes supports a claim, he should identify each defendant who took that action.

Similarly, Poff refers to the falsification of his PSU records throughout the complaint, but often fails to identify the individuals who did this. Poff also alleges that certain defendants falsified records related to his numerous grievances, but does not explain how these individuals falsified these records. Such factually unsupported allegations do not state a civil rights claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (to state a claim, "a complaint must contain sufficient *factual matter*, accepted as true, to state a claim to relief that is plausible on its face" (emphasis added)). Furthermore, Poff has not stated a civil rights claim about defendants Hinadui and Wilkerson because there are no allegations in the complaint stating what they did, or did not do, to violate his civil rights. *See Colbert*, 851 F.3d at 657; *Stewart v. Rice*, No. 12-CV-339-BBC, 2012 WL 2328227, at *2 (W.D. Wis. June 19, 2012) ("Plaintiff cannot state a claim upon which relief may be granted against defendants not discussed in the body of the complaint.").

Another general problem is that the complaint is poorly organized, which is partly a result of Poff's conglomeration of multiple unrelated incidents. Poff should try harder to organize his allegations in chronological order in his amended complaint. The court may ask Poff to revise any future filings that are similarly disorganized.

## CONCLUSION

I will give Poff a final chance to amend his complaint to fix the problems identified in this order. I will order Poff to file his amended complaint on the court's prisoner complaint form. If Poff needs any further space to allege his claims, he may submit no more than eight

supplemental pages. Any handwritten or typewritten text on the form or any supplemental sheet must be large enough, with a space between paragraphs and adequate margins for the court to read it easily. Poff's complaint does not meet this standard.

In drafting his amended complaint, Poff should be mindful that, to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. Rule 8(a)(2). The amended complaint's allegations must be "simple, concise, and direct." Fed. R. Civ. P. 8(d). Poff should state his allegations in numbered paragraphs, "each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Poff should identify the claims he wishes to allege in the amended complaint, but should omit any legal arguments.

Poff should carefully consider whether he is naming proper defendants and omit defendants who did not personally participate in, or otherwise cause, a violation of federal law. Poff must explain what each defendant did, or failed to do, to violate his federal rights, and should avoid referring to defendants collectively. Poff should also identify by full name all the individuals he wishes to sue in the amended complaint's caption. If Poff does not know the name of an individual who allegedly violated his federal rights, he may name that individual as a Doe defendant in the amended complaint's caption and body. To the extent feasible, Poff should give each Doe defendant as specific a name as possible, such as "John Doe Day Shift Correctional Officer," or "Jane Doe Night Shift Nurse."

ORDER

IT IS ORDERED that:

1. Plaintiff's complaint, Dkt. 1, is DISMISSED.

2. Plaintiff may have until July 12, 2023, to file an amended complaint that fixes the above deficiencies.

3. The amended complaint will act as a complete substitute for the complaint. This case will proceed on only the allegations made and claims presented in the amended complaint, and against only the defendants specifically named in the amended complaint's caption.

4. If plaintiff does not comply with this order, I may dismiss the case.

5. The court expects the parties to treat each other and the court with respect. Any abusive or threatening comments or conduct may result in sanctions, including entry of judgment against the offending party.

6. It is plaintiff's obligation to inform the court of any new address. If he fails to do this and defendants or the court cannot locate him, this case may be dismissed for failure to prosecute.

7. The clerk of court is directed to send plaintiff copies of this order and the court's prisoner complaint form.

Entered June 12, 2023.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge