IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JEFF POFF,

                   Plaintiff,                   OPINION AND ORDER

    v.

                                                 23-cv-43-wmc

KRYSTAL CHESTNUT, AUSTIN
MELLEM, GARY BOUGHTON,
HEIDI BROWN, MARK KARTMAN,
MATTHEW SCULLION, JAMIE ADAMS, and
WYATT WEADGE,

                   Defendants.

Plaintiff Jeff Poff, who is representing himself, is incarcerated by the Wisconsin Department of Corrections ("DOC") at Waupun Correctional Institution. Poff was granted leave to proceed on Eighth Amendment and First Amendment retaliation claims against the defendants, who are correctional officers and officials at the Wisconsin Secure Program Facility ("WSPF"). All but one defendant have filed a motion for summary judgment on the ground that Poff failed to exhaust his administrative remedies on any of the claims against them. (Dkt. #59.) The other defendant, former Correctional Officer Wyatt Weadge, appears to have been served but has failed to answer or otherwise appeared. For reasons explained below, defendants' motion for summary judgment will be granted and the claims against them will be dismissed, save defendant Weadge.

BACKGROUND

While confined at WSPF in September 2021, Poff sent a letter to the Wisconsin Attorney General, alleging that WSPF Security Director Kartman was having an affair with Health Services Manager Adams. After an investigator for the Attorney General contacted

WSPF Warden Boughton, Lieutenant Scullion issued Poff a conduct report for lying. Poff was found guilty and was punished with 90 days' disciplinary segregation where, on October 15, 2021, he harmed himself after telling officers that he felt suicidal.

The court granted Poff leave to proceed with a claim that Officers Weadge and Chestnut, as well as Sergeant Mellum, violated his rights under the Eighth Amendment by consciously disregarding his safety or failing to protect him from harm on October 15, 2021, by telling him to kill himself with a paperclip that Weadge intentionally left in his cell. (Dkt. #22.) The court also granted Poff leave to proceed with a claim that Warden Boughton, Assistant Warden Stoudt, and Unit Manager Brown consciously disregarded Poff's safety when they ignored his complaint that Weadge was retaliating against him. (*Id*.) Finally, the court granted Poff leave to proceed with claims that all of the defendants retaliated against him one way or another because of the letter he sent to the Wisconsin Attorney General. (*Id*.)

OPINION

The Prison Litigation Reform Act ("PLRA") bars a prisoner's civil action about prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To satisfy the exhaustion requirement, a prisoner must follow all the prison's rules for completing its grievance process. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This requires: (1) following instructions for filing an initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005); and (2) filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005).

The exhaustion requirement, which is mandatory, is designed to afford prison administrators an opportunity to investigate and resolve grievances without litigation.

2

*Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006).  A prisoner is required to provide notice of his claim by specifying "the nature of the wrong for which redress is sought . . . [to give] prison officials a fair opportunity to address his complaint." *Jackson v. Esser*, 105 F.4th 948, 959 (7th Cir. 2024) (internal quotations and citations omitted).  Thus, exhaustion is required "even if . . . the prisoner believes that exhaustion is futile." *Dole v. Chandler*, 438 F.3d 804, 808-09 (7th Cir. 2006); *see also Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) ("An inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement.").  However, a prisoner's failure to exhaust is an affirmative defense, which defendants must accordingly prove.  *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018).  In particular, at summary judgment, defendants must show that there is no genuine dispute of material fact as to plaintiff's failure to exhaust, and therefore, they are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

To exhaust administrative remedies, a Wisconsin prisoner must follow the Inmate Complaint Review System ("ICRS") process set forth in Wisconsin Administrative Code Chapter DOC 310, which begins with filing a complaint with the Institution Complaint Examiner ("ICE") within 14 days after the incident giving rise to the grievance. Wis. Admin. Code § DOC 310.07(2).  The ICE may return a complaint if it does not satisfy the criteria found in § 310.07(1), (3), (4), or (5).  Wis. Admin. Code § DOC 310.10(5).  For example, the inmate complaint may only contain "one clearly identified issue" that the inmate seeks to raise. Wis. Admin. Code § DOC 310.07(5).  Likewise, a complaint "complaint must contain sufficient information for the department to investigate and decide the complaint."  Wis. Admin. Code § DOC 310.07(6).  If the inmate is unsatisfied with the result, he may file an appeal to the Corrections Complaint Examiner ("CCE") within 14 days of the date of the

3

decision on the inmate complaint or, if the inmate does not receive a decision, 45 days after the date the ICE enters the complaint. Wis. Admin. Code §§ DOC 310.09(1), 310.11(3). The CCE reviews the underlying decision and sends a recommendation to the DOC Secretary, whose decision is final. Wis. Admin. Code §§ DOC 310.12(9), 310.13(2)-(3).

The Seventh Circuit applies a "strict compliance approach to exhaustion." *Dole*, 438 F.3d at 809. This means that if a prisoner failed to complete any step in the exhaustion process before bringing his lawsuit, the court must dismiss his claims. *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999). "Substantial compliance with administrative remedies" is insufficient to satisfy the exhaustion requirement. *Farina v. Anglin*, 418 F. App'x 539, 543 (7th Cir. 2011) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001), and *Dole*, 438 F.3d at 809).

Here, defendants are entitled to summary judgment because, although Poff filed eight inmate complaints that are potentially relevant to this lawsuit, the only inmate complaint he filed about the incident that occurred on October 15, 2021, concerned harassment and retaliation by Weadge with no mention of any misconduct by Chestnut, Mellem, or any other officer. (Davidson Decl. ¶ 16, WSPF-2021-16117, Ex. 1007 (dkt. #61-8), at 12-13.) Poff repeated his allegations against Weadge in a subsequent inmate complaint, but again failed to include any allegations against Chestnut or Mellem. (Davidson Decl. ¶ 17, WSPF-2021-16531, Ex. 1008 (dkt. #61-9), at 11.) Although a prisoner is not required to identify officers by name in a grievance, he is required to provide sufficient information to identify the defendant as the target of the complaint or to implicate them in the alleged wrongdoing. *See Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) (dismissing claims against a correctional officer where the plaintiff's grievance "neither mentioned [defendant] by name nor provided information that should have identified him to the grievance officer"); *Ambrose v. Godinez*, 510

4

F. App'x 470, 472 (7th Cir. 2013) (affirming the dismissal of prison officials where the plaintiff's grievance failed to mention them by name or otherwise implicate them in the alleged misconduct); *Thomas v. Shell*, No. 10-cv-00017, 2011 WL 2693207, at *5 (S.D. Ill. June 24, 2011) (finding that where a prisoner was "face to face with the corrections staff he is accusing of misconduct," vague and generalized allegations in a grievance were insufficient to exhaust). Thus, while Poff did exhaust administrative remedies regarding his claim against Weadge for his actions on October 15, 2021, Poff did not exhaust such a claim against Chestnut and Mellem. Similarly, none of the relevant inmate complaints allege that Poff complained about retaliation by Weadge to Boughton, Stoudt, or Brown, but was ignored. As a result, Poff did not exhaust his claim that Boughton, Stoudt, and Brown consciously disregarded his safety in October 2021.

Poff has also failed to exhaust administrative remedies regarding his claim that the defendants retaliated against him for sending a letter to the Wisconsin Attorney General in September 2021. Although Poff did file an inmate complaint which alleged that unspecified security personnel filed a false conduct report against him in retaliation for sending the letter, (Davidson Decl. ¶ 10, WSPF-2021-15826, Ex. 1002 (dkt. #61-2), at 10), Poff did *not* mention retaliation by anyone during his appeal from that dismissed complaint. (*Id*. at 15.) Thus, even assuming that his initial grievance was sufficient to raise a retaliation claim concerning the conduct report filed against Poff by Lieutenant Scullion, Poff failed to identify retaliatory acts as to any of the other defendants. To exhaust a retaliation claim, an inmate must identify "both the protected conduct that caused the retaliation *and* the retaliatory act." *Boyd v. Heil*, No. 17-cv-209-wmc, 2020 WL 137300, at *3 (W.D. Wis. Jan. 13, 2020) (emphasis in original) (citing *Lockett v. Goff*, No. 17-cv-93-jdp, 2017 WL 4083594, at *2 (W.D. Wis. Sept. 13, 2017);

5

and *Wine v. Pollard*, No. 08-cv-173-bbc, 2008 WL 4379236, at *3 (W.D. Wis. Sept. 23, 2008)). More importantly, Poff failed to pursue any retaliation claim during his appeal, as also required for exhaustion. *Pozo*, 286 F.3d at 1024.

Nevertheless, Poff argues that he satisfied the exhaustion requirement. In support, he points generally to the eight inmate complaints referenced by the defendants. (Dkt. #64.) However, Poff does not address the defendants' detailed discussion about the missing content in each of the eight inmate complaints, and general allegations are insufficient to create a genuine issue of material fact. *See Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016) ("Rule 56 demands something more specific than the bald assertions of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." (quotation marks omitted)). Further, the court has reviewed the inmate complaints in the record and finds them insufficient to put prison officials on notice of any conscious-disregard claims against Chestnut, Mellem, Boughton, Stoudt, and Brown under the Eighth Amendment. Likewise, the record confirms that Poff did not raise a First Amendment retaliation claim against defendants Chestnut, Mellem, Boughton, Brown, Kartman, Scullion, and Adams through all steps of the available administrative process.

Accordingly, the defendants' motion for summary judgment on the issue of exhaustion will be granted. Even so, the court will dismiss plaintiff's claims against Chestnut, Mellem, Boughton, Brown, Kartman, Scullion, and Adams without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust is always without prejudice). This means plaintiff can refile these claims if he can successfully exhaust them, although he will

6

likely find it impossible to file a proper grievance because the relevant events happened too long ago.

ORDER

IT IS ORDERED that:

1) Defendants' motion for summary judgment for failure to exhaust administrative remedies (dkt. #59) is GRANTED and plaintiff's claims against defendants Krystal Chestnut, Austin Mellem, Paula Stoudt, Gary Boughton, Heidi Brown, Mark Kartman, Matthew Scullion, and Jamie Adams are DISMISSED without prejudice, as set forth above.

2) Because the claims against defendants Chestnut, Mellem, Stoudt, Boughton, Brown, Kartman, Scullion, and Adams have been dismissed, the case will go forward only on the claims against the remaining defendant, Wyatt Weadge, and the stay entered on plaintiff's default judgment proceedings (dkt. #56) is LIFTED. The court will issue a separate scheduling order for plaintiff to submit a motion for a default judgment with proof of his damages stemming from Weadge's actions on October 15, 2021.

3) Plaintiff's motions for clarification of the status of this lawsuit (dkt. #74, #76) are DENIED AS MOOT.

Entered this 28th day of August, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge