IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JEFF POFF,

                        Plaintiff,                                      OPINION AND ORDER

        v.
                                                                        23-cv-43-wmc

WYATT WEADGE,

                        Defendant.

Plaintiff Jeff Poff, a state prisoner who is representing himself, filed a motion for default judgment against defendant Wyatt Weadge, a former correctional officer with the Wisconsin Department of Corrections. (Dkt. #32.) The clerk entered default against Weadge on February 20, 2024. (Dkt. #34.) Thereafter, Poff filed a motion for entry of a default judgment with a supporting declaration and an affidavit with an assortment of documents related to his claims. (Dkts. ##39-41.) Poff seeks $250,000 in compensatory damages, $50,000 in punitive damages, and costs. (Dkt. #41, at 4-5.) Poff has since supplemented the record with additional exhibits in support of his claim for these damages. (Dkt. #68.) After giving defendant Weadge one final opportunity to appear and show cause why a default judgment should not be entered against him, the court held a hearing on damages on November 5, 2025. Based on the plaintiff's submissions and the testimony at the hearing, the court will now grant his motion for entry of a default judgment (dkt. #41) and award damages in the amount of $50,000, as well as costs in the amount of $400 if substantiated to the satisfaction of the Clerk of Court.

FACTS[1]

While incarcerated at the Wisconsin Secure Program Facility ("WSPF") in September 2021, Poff sent a letter to the Wisconsin Attorney General that accused WSPF Security Director Mark Kartman of having an affair with WSPF Health Services Manager Jamie Adams. When the letter was brought to the attention of prison officials, Poff was issued a conduct report for lying about staff. Poff was then found guilty as charged and punished with 90-days disciplinary segregation. While in disciplinary segregation on October 15, 2021, Poff harmed himself by cutting his forearms with a paper clip after telling officers that he felt suicidal.

The court granted Poff leave to proceed with claims that Weadge and other prison officials acted with conscious disregard for Poff's safety or failed to protect him on October 15, 2021, after he threatened to engage in self-harm. (Dkt. #22.) Poff was also granted leave to proceed with a claim that defendants acted in retaliation for the letter that Poff sent to the Wisconsin Attorney General about Security Director Kartman. (*Id.*)

No longer employed by the Wisconsin Department of Corrections, Weadge waived service of process by the United States Marshal. (Dkt. #30.) Since then, Weadge has failed to answer or otherwise defend against Poff's claims. Meanwhile, Weadge's co-defendants -- WSPF Security Director Kartman, Warden Gary Boughton, Assistant Warden Paula Stoudt, Sergeant Austin Mellum, Officer Krystal Chestnut, Unit Manager Heidi Brown, Lieutenant Matthew Scullion, and Health Services Manager Adams -- filed an answer, then moved for summary judgment on the grounds that Poff failed to exhaust

---

[1] Unless otherwise indicated, the facts in this section are taken from plaintiff's amended complaint and are presumed true for purposes of this default judgment proceeding. (Dkt. #13.)

available administrative remedies before filing suit as required by the Prison Litigation Reform Act ("PLRA"). (Dkt. #31; Dkt. #59.)

Poff filed a motion for default judgment on February 20, 2024, citing Weadge's failure to answer after waiving service of process. (Dkt. #32.) The clerk entered a default against Weadge the following day. (Dkt. #34.) Thereafter, Poff filed a motion for entry of default judgment with a supporting declaration and an affidavit, attaching 77 pages of documents related to his claims. (Dkts. ##39-41.) In addition to compensatory and punitive damages, Poff seeks court costs, including the $350.00 filing fee, $100.00 to repay a legal loan for materials to litigate this case, and $150.00 for law books. (Dkt. #41, at 4-5.) He also seeks reimbursement for $500.00 that he allegedly paid to a private attorney for drafting a motion for default judgment damages. (Dkt. #84.)

The court initially denied Poff's motion for entry of default judgment without prejudice as premature, subject to reconsideration once the claims against Weadge's then co-defendants were resolved. (Dkt. #67) (citing *Home Ins. Co. of Illinois v. Adco Oil Co.*, 154 F.3d 739, 741 (7th Cir. 1998) (courts may not enter default judgment in a suit against multiple defendants "until the matter has been resolved as to all").) Poff filed a motion for reconsideration, with additional evidence in support of his claims. (Dkt. #68.) After the claims against Weadge's co-defendants were dismissed for lack of exhaustion, the court granted plaintiff's motion for reconsideration and scheduled a default judgment hearing, which was held on November 5, 2025. (Dkt. #78.)[2]

---

[2] The court granted summary judgment in favor of Weadge's co-defendants after finding that Poff failed to exhaust administrative remedies on his claims against them as required by the PLRA, 42 U.S.C. § 1997e(a). (Dkt. #77.) The court noted, however, that there were records showing that Poff *did* exhaust administrative remedies regarding his claims against Weadge for his actions on

OPINION

Federal Rule of Civil Procedure 55 establishes a two-step process for obtaining a default judgment. First, the clerk of court must enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise[.]" Fed. R. Civ. P. 55(a). Second, the plaintiff must apply to the court for default judgment when his claim is not for a sum certain or a sum that can be made certain by mere computation. Fed. R. Civ. P. 55(b)(2).

"Upon default, the well-pled allegations of the complaint relating to liability are taken as true, but those relating to the amount of damages suffered ordinarily are not." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). Thus, "damages must be proved unless they are liquidated or capable of calculation." *Id.* (internal quotation marks and citation omitted); *see also Domanus v. Lewicki*, 742 F.3d 290, 303 (7th Cir. 2014) ("That said, while a default judgment conclusively establishes liability, the victor must still prove up damages."). When considering a motion for default judgment, a court may hold a hearing to determine damages, particularly where the amount claimed is not "capable of ascertainment from definite figures contained in documentary evidence or detailed affidavits." *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1404 (7th Cir. 1993).

A default judgment is justified when "the defaulting party has exhibited a willful refusal to litigate the case properly," as evinced by "a party's continuing disregard for the procedures of the court" and a "willful choice not to exercise even a minimal level of diligence." *Davis v. Hutchins*, 321 F.3d 641, 646 (7th Cir. 2003). Here, the record

---

October 15, 2021. (*Id.* at 4-5.) Accordingly, lack of exhaustion was not an available defense for Weadge.

establishes that defendant Weadge has "exhibited a willful refusal to litigate the case properly." *Id*. Specifically, the defendant executed a waiver of service that had advised him of his deadline to answer and expressly warned that a default judgment could be entered against him if he failed to comply. (Dkt. #30.) Because there is no indication that defendant is an infant or incapacitated, Fed. R. Civ. P. 55(b), there is no apparent reason why the court should not proceed to consider a default judgment in favor of plaintiff as to defendant's liability.

## I.  Liability

"The basic effect of an entry of default (step one) is that '[u]pon default, the well-pleaded allegations of a complaint relating to liability are taken as true.'" *VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). Even though the court accepts the well-pleaded allegations in the complaint relating to liability as true, it still must inquire into whether those well-pleaded allegations state a prima facie case as to liability. *See Heartland Footwear Sales Inc. v. 8215774 Canada, Inc.*, No. 3:19 CV 1142, 2021 WL 1732078, at *2 (N.D. Ind. May 3, 2021) ("[A]n entry of default judgment is only appropriate if the allegations, along with other evidence submitted, establish a cognizable claim for relief."). Having already granted plaintiff leave to proceed with claims under the Eighth and First Amendments, the court addresses those claims briefly below.

### A.  Eighth Amendment -- Conscious Disregard

Plaintiff's primary claim is that defendant Weadge acted with conscious disregard to the risk that he would engage in self-harm while in disciplinary segregation on October

15, 2021.    The Eighth Amendment prohibits prison officials from responding with "deliberate indifference" to a "substantial risk of serious harm" to an inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).  Moreover, significant self-harm constitutes "serious harm."  *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010).  To bring a claim for deliberate indifference to serious risk of self-harm or suicide, the plaintiff must show that the prison officials (1) "knew of a significant likelihood that the inmate would imminently attempt" self-harm or suicide and (2) "failed to take reasonable steps to prevent it." *Davis-Clair v. Turck*, 714 Fed. App'x 605, 606 (7th Cir. 2018).

Plaintiff alleged that while he was in disciplinary segregation on October 15, 2021, he told officers, including defendant, that he felt suicidal and needed to be placed on observation status. (Dkt. #13, at 6.)  Plaintiff further alleged that the defendant purposely placed a paper clip in his cell, and after plaintiff proceeded to cut himself with it, did nothing to intervene, responding instead by telling plaintiff to go ahead and kill himself because he was a "snitch." (*Id*. at 6-7; Dkt. #40-1, at 40.)  Plaintiff's allegations of self-harm, which are taken as true, are sufficient to state a claim that Weadge acted with conscious disregard to the risk that plaintiff would harm himself and is liable for violating plaintiff's rights under the Eighth Amendment.  *See Lisle v. Welborn*, 933 F.3d 705, 717 (7th Cir. 2019) (reversing summary judgment for defendant nurse on prisoner's Eighth Amendment deliberate indifference claim where nurse taunted and encouraged an inmate known to be suicidal and in the midst of a mental health crisis to take his own life).

### B.  First Amendment -- Retaliation

Plaintiff also alleged that defendant's actions on October 15, 2021, were done in

retaliation for the letter Poff sent to the Attorney General, as evidenced by his calling plaintiff a snitch before telling Poff to kill himself. To prevail on a retaliation claim, plaintiff must show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was at least a motivating factor in defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Although plaintiff was found guilty of lying about staff for the remarks he made in his letter, his allegations of retaliation -- which involve false statements made in outgoing mail -- are sufficient to state a claim for liability against Weadge under the First Amendment as well. *Carter v. Radtke*, No. 10-cv-510-wmc, 2014 WL 5494679, at *17-18 (W.D. Wis. Oct. 30, 2014).

## II. Damages

Once liability is determined, the "plaintiff still must establish his entitlement to the relief he seeks." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). A plaintiff seeking damages under 42 U.S.C. § 1983 may recover both compensatory and punitive damages. *See Kelty v. Patterson*, 18-CV-762, 2019 WL 2417644, at *5 (E.D. Wis. June 10, 2019), *report and recommendation adopted*, 18-CV-762, 2019 WL 3501526 (E.D. Wis. July 31, 2019).

### A. Compensatory Damages

Plaintiff appears to seek compensatory damages primarily for pain and suffering caused by defendant Weadge's actions. Because plaintiff is a prisoner, recovery of compensatory damages for mental or emotional injuries are limited by the PLRA in all cases involving prison conditions absent a showing that the plaintiff suffered a physical injury. 42 U.S.C. § 1997e(e); *Cassidy v. Indiana Dep't of Corr.*, 199 F.3d 374, 376 (7th Cir.

2000) ("§ 1997e(e) precludes [a] prisoner's claim for [an] emotional injury" as to which "there is no prior showing of physical injury" (internal quotation marks omitted)).[3]  "To satisfy § 1997e(e), prisoners must show an injury that is *more than negligible although not necessarily significant*."  *Hacker v. Dart*, 62 F.4th 1073, 1079 (7th Cir. 2023) (emphasis added).  However, the Seventh Circuit has held that "prisoners need not allege a physical injury to recover damages [for First Amendment claims] because the deprivation of the constitutional right is itself a cognizable injury, regardless of any resulting mental or emotional injury."  *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003); *see also Rowe v. Shake*, 196 F.3d 778, 781-82 (7th Cir. 1999) ("A prisoner is entitled to judicial relief for a violation of his First Amendment rights aside from any physical, mental, or emotional injury he may have sustained.").

The evidence reflects that plaintiff is a 53-year old army veteran with a diagnosis of post-traumatic stress disorder ("PTSD") and paranoid personality disorder that predates his imprisonment.  (Dkt. #40-1, at 41, 72, 74-75.)  At the time of this incident, medical providers observed that plaintiff had two-inch long, "superficial scratches" on his "right and left forearms."  (Dkt. #40-1, at 40; Dkt. #68-18; Dkt. #68-16; Dkt. #68-11.)  After cutting himself, plaintiff was also taken to the Gundersen Boscobel Hospital emergency room for complaints of chest pain, which were determined to be symptoms of an anxiety

---

[3]  Section 1997e(e) provides as follows:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

42 U.S.C. 1997e(e).

attack. (Dkt. #40-1, at 39; Dkt. #68-16, at 1.) However, plaintiff told medical providers that the anxiety attack was brought on by officers who handled his snack bag without wearing gloves. (Dkt. #40-1, at 39; Dkt. #68-16, at 1.) Plaintiff further identified defendant Weadge as one of the officers who refused to wear gloves when handing out his snack bag, which prompted plaintiff to go on a hunger strike. (Dkt. #40-1, at 18.) Plaintiff stated further that defendant had illuminated his cell on October 15, 2021, while banging on his cell door and making "abusive" statements all night as plaintiff was cutting his wrists. (*Id.*) Plaintiff was then treated at the hospital with valium for his anxiety and returned to WSPF with instructions to follow up with the psychiatric services department for counseling and medication adjustment. (Dkt. #40-1, at 39; Dkt. #68-16, at 1.)

Plaintiff next reported having self-inflicted injuries on both arms on November 5, 2021. (Dkt. #40-1, at 33.) A nurse cleaned the "scratches" with saline, patted them dry, and advised plaintiff to "keep the areas clean with soap and water and to leave the areas open to air to promote healing." (*Id.*) Plaintiff appears to claim that these are the same scratches that he inflicted with the paper clip defendant placed in his cell on October 15, 2021. (*Id.*)

"Awarding any amount of damages for pain and suffering has long been criticized as requiring the trier of fact to monetize a loss that is incommensurable with any monetary measure." *Jutzi-Johnson v. United States*, 263 F.3d 753, 758 (7th Cir. 2001). While juries are not required to explain their determinations of damages for pain and suffering, the Seventh Circuit requires district judges to provide such explanations with citations to comparable cases when awarding such damages. *Id*. at 759.

The record establishes that plaintiff suffered self-inflicted, superficial scratches to his forearms as a result of Weadge's actions on October 15, 2021.  (Dkt. #40-1, at 40; Dkt. #68-18; Dkt. #68-16; Dkt. #68-11.)  There are no records showing that plaintiff's injuries required medical care beyond cleaning (dkt. #40-1, at 33), but plaintiff credibly testified at the hearing that his wounds were bleeding and that a nurse applied steri-strips while he was being treated for chest pains at the hospital after self-inflicting these injuries.  Plaintiff further credibly testified that he experienced severe mental anguish as the result of defendant's actions, including the other mistreatment leading up to the cutting incident in which defendant provoked plaintiff to commit self-harm because he was a "fucking snitch," which caused plaintiff to experience symptoms of a heart attack on the night of October 15.  After the hearing, plaintiff was allowed to supplement the record with photographs depicting faint scars on his forearms that could have been made with a paperclip.  Although there is no proof showing when these scratches were inflicted, plaintiff credibly testified that these are the result of self-inflicted wounds caused by Weadge's actions on October 15.

The Seventh Circuit has held that minor harm in the form of superficial scratches are not the kind of cognizable harm that can support a prisoner's recovery of damages under § 1983 for deliberate indifference to substantial risk of serious harm.  *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (an inmate may not sustain a claim against officers who failed to prevent him from self-inflicted injuries consisting of minor scratches treated with a gauze bandage).  However, the Seventh Circuit has also held that taunting a suicidal prisoner and actually encouraging him to kill himself could be deemed cruel infliction of mental pain and deliberate indifference to his risk of suicide without evidence

10

of purposeful infliction of harm.  *Lisle,* 933 F.3d at 717; *see also Lord,* 952 F.2d at 905

(cautioning against denying a damage award for "an insincere threat" based only on "minor

scratches" where evidence is provided that inmate "suffered any other form of injury (for

example, psychological harm)").  Here, plaintiff has credibly testified, and the record at

least somewhat substantiates, that he suffered severe psychological distress in addition to

the minor scratches that plaintiff self-inflicted as a result of defendant's torment.

Regardless of his limited physical injury sustained that night, plaintiff has further

demonstrated an entitlement to relief for the mental and emotional anguish suffered due

to defendant's retaliatory conduct in violation of the First Amendment.  *Calhoun,* 319 F.3d

at 940; *Rowe,* 196 F.3d at 781-82.

While plaintiff seeks $250,000 in compensatory damages, the evidence he has

offered supports an award of no more than $10,000 to redress physical and emotional

injuries inflicted in violation of plaintiff's rights under Eighth and First Amendments.

### B. Punitive Damages

Having presumptively "been made whole for his injuries by compensatory damages,

… punitive damages should only be awarded if the defendant's culpability, after having

paid compensatory damages, is so reprehensible as to warrant imposition of further

sanctions to achieve punishment or deterrence." *Estate of Moreland v. Dieter,* 395 F.3d 747,

757 (7th Cir. 2005) (quoting *State Farm Mutual Automobile Ins. Co. v. Campbell,* 538 U.S.

408, 419 (2003)).  Punitive damages are appropriate against persons in a § 1983 action

when the conduct complained of is "motivated by evil intent or involving reckless or callous

indifference to the federally-protected rights of others."  *Smith v. Wade,* 461 U.S. 30, 45-

49, 56 (1983); *Alexander v. Cty. of Milwaukee*, 474 F.3d 437, 453 (7th Cir. 2007). If this showing is made, punitive damages are recoverable under § 1983 even in the absence of actual damages. *Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001); *Erwin v. Cnty. of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir. 1989). Moreover, the PLRA's limit on compensatory damages, which must be based on a physical injury, does not apply to punitive damages. *Calhoun*, 319 F.3d at 942; *Hacker*, 62 F.4th at 1078.

Plaintiff seeks $50,000 in punitive damages for defendant Weadge's conscious disregard for his Eighth Amendment rights and for retaliating against him by taunting him while he was suicidal, providing a paper clip for him to cause self-harm, and ignoring his threats to do so while he was in disciplinary segregation on October 15, 2021. Further, the record reflects that while in disciplinary segregation plaintiff had been placed in observation status for attempted self-harm on October 6, 2021, and further that "security staff" were asked thereafter to update the psychiatric services unit if plaintiff engaged in any more self-harm behavior. (Dkt. #68-22.) Finally, plaintiff alleged and his court must now accept that defendant Weadge was aware of his mental health issues and propensity to self-harm, yet: (1) callously failed to protect him from self-harm when plaintiff expressed suicidal thoughts on October 15, 2021; (2) provided an instrument for self-harm; (3) expressed disdain for his being a "snitch"; and (4) encouraged plaintiff to kill himself.

As plaintiff credibly described at the hearing, defendant's actions on the night of October 15, 2021, were also part of a week-long campaign of harassment that caused plaintiff to go on a hunger strike while in disciplinary segregation and ultimately provoked plaintiff to engage in self-harm with an implement that Weadge not only provided, but encouraged him to use with the knowledge that plaintiff had mental health issues and had

recently attempted suicide.  Based on the evidence in this record and plaintiff's compelling testimony, the court finds punitive damages appropriate in light of defendant Weadge's reprehensible behavior and callous disregard for plaintiff's constitutional rights. Accordingly, the court will award plaintiff punitive damages in the amount of $40,000.

### C. Court Costs and Expenses

Plaintiff also seeks costs of court and litigation expenses.  (Dkt. #41, at 4-5.) Specifically, plaintiff seeks costs of court including the $350.00 filing fee, $100.00 to repay a legal loan, and $150.00 for his law books.  (*Id.*)  He has also filed a motion that requests reimbursement for $500.00 in attorney's fees that he repeatedly paid to a privately retained attorney, Robert Myerhoff, for drafting a three-page motion for a default judgment.  (Dkt. #84.)

Prevailing parties in litigation under § 1983 are entitled to recover costs under 28 U.S.C. § 1920, including docketing fees and the costs of making any necessary copies. These can be submitted to the clerk of court in a bill of costs under Federal Rule of Civil Procedure 54.  Out-of-pocket expenses may be included in an award of compensatory damages if supported by evidence in the record.  *Horina v. Cty. Of Granite Cty., Ill.*, 538 F.3d 624, 636-37 (7th Cir. 2008).

Plaintiff was granted leave to proceed without prepayment of the filing fee for indigent litigants, which has been assessed against him in the amount of $350.00.  Court records reflect that plaintiff has paid a total of $34.24 in fees to date.  In addition, plaintiff was approved for a legal loan in the amount of $100.00 to pay for materials used in litigating this case (paper, pens, envelopes, etc.) on December 4, 2023.  (Dkt. #40-1, at

76.)  Plaintiff also presents receipts for two law books that he purchased on his own for a total expenditure of $134.95 ($75.00 + $59.95).  (Dkt. #40-1, at 70, 77.)  Finally, plaintiff acknowledged during the hearing that he used the law books and some of the legal materials purchased with his legal loan in other court cases he has filed as well.

Because the court is unable to waive the full amount of the filing fee, the court will award $350 in costs plus half of the legal loan ($50).  However, plaintiff will need to submit a bill of costs to the clerk of court to recover these amounts under Fed. R. Civ. P. 54.  The court will not award additional costs for plaintiff's out-of-pocket expenditure for law books, but considered that amount in determining his award of compensatory damages.

Finally, the record confirms that Poff filed the motion for default judgment under his own signature and was never formally represented by Myerhoff during these proceedings. (Dkt. #68-1.)  Because plaintiff has represented himself throughout this case, he is *not* entitled to recover attorney's fees.  *See Kay v. Ehrler*, 499 U.S. 432, 435 (1991) (noting circuit-wide agreement "that a pro se litigant who is *not* a lawyer is *not* entitled to attorney's fees") (emphasis in original).

## ORDER

IT IS ORDERED that:

1)  Plaintiff Jeff Poff's motion for entry of a default judgment against defendant Wyatt Weadge (dkt. #41) is GRANTED

2)  Defendant Wyatt Weadge shall pay plaintiff Jeff Poff a total of $50,000.00 in compensatory and punitive damages.

3)  Plaintiff is instructed to submit a bill of costs to the clerk of court under Fed. R. Civ. P. 54 in the amount of $400.

4) The clerk of court is directed to enter final judgment for $50,000 plus costs, and to close this case.

Entered this 3rd day of December, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge